EDWIN O. NICHOLS v. WILLIAM L. BANCROFT AND CARROLL D. BANCROFT.

*Fraudulent conveyances—Deed of land in payment of honest debt.*

1. Where property goes to pay an honest debt, that use of it is lawful, although it may cut off the redress of all others, and although intended to do so.

2. In order to destroy the validity of a deed claimed to have been executed to pay an honest debt, the court must not only be satisfied that the deed was made with intent to hinder, delay, or to defraud creditors, but that the deed was not actually made to pay a debt justly due.

3. In this case it is held that the testimony on the part of the complainant falls far short of making a case upon which a court of equity would be justified in setting aside the deed claimed to be in fraud of creditors, while the case made by defendants' proofs satisfies the Court that the deed was taken in payment of a *bona fide* debt.

Appeal from St. Clair.    (Canfield, J.)    Argued February 6, 1889.    Decided February 15, 1889.

Bill in aid of execution.    Defendants appeal.    Decree reversed and bill dismissed.    The facts are stated in the opinion.

*Charles K. Dodge (Parker & Burton,* of counsel), for complainant.

*Atkinson & Vance,* for defendants.

LONG, J. The bill is filed in this cause in aid of execution. The court below made a decree, substantially as prayed in the bill, from which defendants appeal. The following is a statement of the facts, which we take largely from the brief of the counsel for complainant:

On March 6, 1883, a judgment in favor of the complainant was obtained in the St. Clair circuit court, against William L. Bancroft and Edgar White, for the sum of $5,141.81, and costs taxed at $20. Counsel for Mr. Nichols, after inquiry and search, found no property upon which to levy, belonging either to Bancroft or White; but, understanding that Mr. Bancroft was to be called as a witness in another case, wherein he was testifying as to his solvency, counsel for Mr. Nichols attended to find out whether he would testify to the ownership of property subject to levy. Mr. Bancroft in his testimony in that case did admit ownership of real estate, but could not recollect the description, and while he was yet testifying counsel hurried out to look up the description, and get a levy made, but before he could do so Mr. Bancroft finished his testimony, and put a deed on record at 11:10 A. M., conveying the land to his son, Carroll D. Bancroft, for an alleged consideration of $400. The levy was made after the deed was filed for record, and this bill is filed in aid of the execution. The defendants claim that the deed was made in pursuance of an arrangement or bargain between them in the winter of 1882 and 1883 to repay money borrowed by Mr. Bancroft from his son, Carroll.

It appears that another judgment had been obtained on notes against Stewart, Goulden, and William L. Bancroft and others, some time previous. Stewart was the only

responsible defendant in that judgment, and had paid it in full. He then began a suit in equity to compel Goulden to pay a moiety of the judgment. Stewart deceased before the hearing. It was in this case that William L. Bancroft was called as a witness to show his solvency or insolvency. Counsel for complainant claim that, if he had been solvent at the time the suit in equity was begun by Stewart against Goulden, his testimony to that effect would have tended to defeat the case, and that his testimony in that case did tend to show his solvency at the time the suit was begun, and at the time he was testifying. It was at this time that counsel for Mr. Nichols attended to find out whether, in his testimony, Bancroft would admit of present ownership of property subject to levy.

Mr. Bancroft was called to testify in the case of *Stewart v. Goulden*, about 10 o'clock A. M., March 13, 1883. He testified to present ownership of $12\frac{1}{2}$ acres of land on section 1 of the township of Wales, St. Clair county, but could not recollect the description. He said he owned it, and that the title was in him. Counsel for Mr. Nichols, who heard the testimony, immediately left the court to get a levy upon the land in the case of *Nichols v. Bancroft and White*. Mr. Dodge, counsel for Mr. Nichols, went some 30 rods, or a little more, to the abstract office, to look up the description, and returned to the court-house, when he found that Mr. Bancroft had finished his testimony, and put the deed on record to his son. Mr. Bancroft says that this deed was not executed until after he gave his testimony in the Stewart case; that, after giving his testimony, he went to his office, executed the deed, and his son, Carroll, took it to the register's office, and put it on record. The testimony shows that the distance from the court-house to his office and return was

74 MICH.—13.

about one-half a mile.    The deed was in Mr. Bancroft's handwriting, and was acknowledged on that day.

It is admitted that Mr. Bancroft and his son, Carroll, were in Port Huron several days before this deed was given, and before Mr. Bancroft gave his testimony in the Stewart case, and remained there several days after that. Mr. Bancroft, in his testimony in the present case, says that he had bargained this land away to his son, Carroll, some three months before he gave his testimony in the Stewart case, and for the consideration of $400, then agreed upon, but that the deed was not then made out, because he did not then have the description; that this deed was to be made in consideration of the $400, which he had before that time borrowed of his son, Carroll.

Counsel for complainant now contend that the foregoing facts show beyond question that the story of William L. Bancroft and his son about borrowing money, and an agreement to deed the land in question in payment thereof, was purely an after-thought,—a story made up to suit the circumstances of the case as well as might be; that there was a concerted action between the two defendants to defeat the complainant's claim, by conveying the property in such a way that it could not be levied upon; and that this was done for the express purpose of defrauding the creditors of the defendant.    There is no contention but what the deed in question was placed upon record before the levy was made.    The foregoing circumstances, in substance, are about all the claims set forth by the pleadings and in the proofs, upon which complainant relies to set aside this deed, except that William L. Bancroft, as is shown, had an order on the bank at Port Huron, dated in February or March, 1883, signed by Carroll, by which he was authorized to draw any money from the bank standing in Carroll's name on

a certain book numbered 1,687, and that the testimony of the defendants is not to be believed. The two defendants were examined as witnesses on the hearing of the case in the court below.

The testimony of the defendant Carroll D. Bancroft was taken by commissioner at Hot Springs, Arkansas. He testifies, in answer to interrogations put to him, that his father, William L. Bancroft, was indebted to him in the sum of about $800; that the sum of $600 was for cash loaned to his father on February 11, 1882, and the balance for cash sent him from Florida, and that on March 13, 1883, he received a deed from his father of a piece of land in the town of Wales, St. Clair county, known as the "Railroad Sand Pit;" that he was present when the deed was executed and acknowledged, having himself requested Charles D. Thompson, a notary in and for said county, to take the acknowledgment, and that the deed was delivered to him by William L. Bancroft; that he took the deed himself to the office of the register of deeds of St. Clair county, and had it recorded; that the consideration for the deed was the money had of him by his father, as before stated, and that the deed was given in pursuance of a previous understanding with his father at Hot Springs, Ark., in the winter of 1882 and 1883; that the first he knew of the judgment of Edwin C. Nichols against William L. Bancroft and Edgar White was when he was called upon to answer the complaint filed in this cause. On his cross-examination he stated that on March 13, 1883, at the time the deed was executed, his mother was at Hot Springs, Ark.; that the money loaned his father was partly money he received from his mother, and partly from his own earnings; that he had money and property which, prior to March 13, 1883, he had earned partly in Port Huron and partly in Hot Springs, as a teacher of languages, as a clerk, and

in the profession of music. Witness further says that he received in 1880 or 1881 a quarter interest in the Arctic Ice Company, of Jacksonville, Fla., valued at $4,000, as a gift from his mother; that the deed in question has been in his possession ever since it was recorded, and was delivered to him by his father on the day of its execution, sometime before dinner, and that he took it at once to the office to have it recorded, and gave it personally to the register of deeds

In answer to a cross-interrogatory put to him, as to the circumstances under which the deed was to be given, the witness testified that there was an agreement between his father and himself in regard to deeding him the land in question; that it was made at their house, in Hot Springs, Ark., in the winter of 1882 and 1883, and it was that he should have the deed when they went north in the spring, and could get the description; that his father said it was good for a ballast pit, and would soon be worth something, as the C. & G. T. Railroad would soon be compelled to set up their track again, and he thought it was worth $400; that it was a verbal, but distinct, agreement, between them, as to the matter, and he believed it was worth that amount; that it was the desire of his father to give him something for the money he had from him, as he had not the money to pay him, and he agreed to take the land at that price; that his mother did not sign the deed, because she was not there. This testimony of Carroll D. Bancroft is fully corroborated by the testimony of his father, William L. Bancroft. On his cross-examination, Mr. William L. Bancroft was asked:

"Was not the fact that that piece of property might be levied upon, being the only one held in your name in this county, the reason of your putting that deed on record at that particular time?

"A. My recollection is that it was not the only piece of property I had. I think the record would show to-day

that I transferred an interest, I quitclaimed an interest, in a forty-acre lot (I would not be positive about the date) since that time. As to your question, I will say, no; I did not put it on record.

" *Q.* Was not that the reason of your executing it at that particular time?

" *A.* I have not the slightest recollection of thinking that there was any trouble impending to me in the Stewart case at all, while, in regard to the Nichols case, it actually had not come to my knowledge that a judgment had been taken there. You see I was not here when that judgment was taken."

Mr. Charles D. Thompson was called as a witness by defendants, and testified that he is assistant cashier of the Port Huron Savings Bank, and that on February 11, 1882, a check was drawn in favor of William L. Bancroft on their bank for $600 on C. D. Bancroft's savings account; that Mr. W. L. Bancroft at that time had a written order from Carroll to draw on that fund; that at the time this check was drawn the fund was $671.88, and one deposit since that in that fund was $2,329.64 in Carroll Bancroft's name; that this account commenced back in 1875, with a deposit of $2; up to January 22, 1877, the total amount of deposit was $330.96; from 1879 to 1881 the total deposit was $500; up to April, 1882, he deposited $3,001.52; in April and May, 1882, he deposited about $1,100; from that time down to October, 1885, it figured up to $9,500, when the account closes; and that, so far as the bank knew, there was no one interested in this account except Carroll D. Bancroft; that drafts were drawn right along from time to time on this account, so that at no time was there a very large balance; but that, as Carroll grew older, the account grew longer, till it closed.

This testimony stands upon this record wholly uncontradicted, except by the circumstances before set out, and these circumstances counsel for complainant contend

should outweigh the positive statements of Carroll, corroborated by his father and Mr. Charles D. Thompson. We find nothing in the record to contradict the fact that on February 11, 1882, the check was drawn for $600 against the fund belonging to Carroll, then in the bank, and that William L. Bancroft had the money. Mr. Thompson testifies to this. The bank-books show the fact. Carroll swears that it was paid, and that it was his money; and he gives an explanation as to how he became possessed of it. Carroll further testifies that it was in consideration of this that his father agreed to deed him this land; and that on March 13, 1883, in pursuance of such agreement, the deed was so made and delivered to him, and he placed it on record. To meet this testimony the complainant says that William L. Bancroft having in the forenoon of March 13, 1883, testified in the Stewart case that he was then the owner of the identical piece of property, and having at once, after giving his testimony, gone to his office, and made and delivered this deed to Carroll, it is evidence of an intent to defraud the complainant and his other creditors. If this fact were conceded, it would not, standing alone, destroy the validity of this deed. Something further must be found. The court must not only be satisfied that the deed was made with intent to hinder, delay, or to defraud creditors, but that the deed was not actually made to pay a debt justly due. The burden was upon the complainant to prove this fact. It not only is not proven, but the testimony, we think, shows very clearly that William L. Bancroft was indebted to Carroll in the amount claimed. Where property goes to pay an honest debt, that use of it is lawful, although it may cut off the redress of all others, and although intended to do so. We think the testimony upon the part of the complainant falls far short of making a case upon which a court of equity

would be justified in setting aside this deed, and, when we take the case made by the defendants' proofs, we are satisfied that Carroll took this deed in payment of a *bona fide* debt then due him from his father.

The decree of the court below must be set aside, and decree entered in this Court dismissing complainant's bill, with costs of both courts.

The other Justices concurred.